# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EXTRA EQUIPAMENTOS E EXPORTACAO LTDA. and PERSIO D. BRIANTE, <br>                        Plaintiffs, <br> v. <br> CASE CORPORATION, <br>                        Defendant. | No. 01 C 8591 <br><br> Hon. Blanche M. Manning |

## MEMORANDUM AND ORDER

Plaintiffs Extra Equipamentos E Exportacao Ltda. and Persio D. Briante (collectively, "Extra") filed the instant diversity action against Defendant Case Corporation ("Case") alleging fraudulent misrepresentation and promissory fraud in connection with an agreement into which Extra entered with Case Brasil & Cia ("Case Brasil"), Case's Brazilian subsidiary, which is not named as a defendant in this action. The current matter is before the Court on Case's Motion to Reconsider this Court's Memorandum and Order issued on January 20, 2005 ("the January Order"), which denied Case's motion to dismiss the fraud claims. Case contends that this Court should reconsider dismissing this action on forum non conveniens grounds based on "newly discovered evidence" and a "misapprehension of the law" by this Court. For the reasons set forth below, the Court DENIES this motion.

A motion to reconsider permits a litigant to alter or amend a prior ruling where: (1) the court has "patently misunderstood a party"; or (2) there has been "a controlling or significant change in the law or facts." Bank of Waunakee v. Rochester Cheese Sales, Inc., 966 F.2d 1185, 1191 (7th Cir. 1990). Because such problems "rarely arise," however, a "motion to reconsider

should be equally rare." Id.  Requests to reconsider a prior ruling should not simply rehash previously raised arguments, Lewis v. Herman, 783 F. Supp. 1131, 1132 (N.D. Ill. 1991), and do not permit a party the opportunity to undo its own procedural failures or present new evidence or arguments "that could and should have been presented to the district court prior to judgment." Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996).  This "court's orders [are not] 'mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'" Thompson v. Perryman, No. 98 C 1596, 1998 WL 786221 (N.D. Ill. Nov. 6, 1998).  Whether to grant a motion to reconsider "is entrusted to the sound judgment of the district court." Matter of Prince, 85 F.3d 314, 324 (7th Cir. 1996).

Here, Case contends that this Court should reconsider its denial of Case's forum non conveniens motion on the grounds that: (1) there is "newly discovered evidence" and (2) this Court erred in concluding that Illinois law governs Extra's fraud claims.  The Court will address each of these contentions in turn.

First, according to Case, "newly discovered evidence confirms that . . . nearly all of the relevant documents are written in Portuguese and located in Brazil, and an overwhelming number of the witnesses with relevant knowledge are located in Brazil, speak Portuguese, and are not subject to the Court's subpoena power."  As a result of this "newly discovered evidence," Case contends that the "private factors" in the forum non conveniens analysis now favor dismissal.[1]

---

[1] The private factors in a forum non conveniens analysis include: the plaintiff's choice of forum; location and access to evidence and witnesses; convenience to the parties and the witnesses; and any other "practical problems that make trial of a case easy, efficient and economical." Kamel v. Hill-Rom Co., 108 F.3d 799, 802-03 (7th Cir. 1997).  Dismissal, however, is only appropriate if the chosen forum "would result in vexation and oppression to the

In support of this argument, Case points to discovery it has allegedly received since the January Order. Case asserts that of the 15,257 pages of documents it has received in response to requests to produce, 93% of the pages "are in Portuguese and will need to be translated to English for use in the litigation." The cost of translating these documents will allegedly run upwards of $850,000. Additionally, of the 37 witnesses Extra has identified with knowledge of its claims, "at least 17 . . . are located in Brazil and likely speak only Portuguese, and . . . are not subject to this Court's subpoena power." To depose these Brazilian witnesses, Case contends that it will incur substantial costs because its attorneys will have to travel to Brazil and hire interpreters at $125 per hour.

After reviewing the above alleged "newly discovered evidence," this Court finds that Case has not shown that litigating this case in the present venue "will result in vexation and oppression to the defendant which would far outweigh the plaintiff's convenience." Kamel, 108 F.3d at 802-03. Of the 37 potential witnesses identified by Extra, 31 of them were identified prior to Case filing its motion to dismiss, and therefore, this cannot be considered "newly discovered evidence" for purposes of a motion to reconsider. See Caisse Nationale De Cedit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1269 (7th Cir. 1996) (motions for reconsideration "cannot . . . be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the [prior] motion"). Of the six remaining witnesses, five are Case or Case Brasil employees, and thus, it should not be a problem for Case to ensure the appearance of these witnesses in this district.

---

defendant which would far outweigh the plaintiff's convenience." Id.

As for the costs of translation and interpreting services, these costs affect both parties in that Extra faces the same problems that Case has with translating relevant documents and the testimony of Brazilian witnesses who do not speak English. Moreover, Case's alleged costs seem somewhat overstated. Because Case Brasil is a 100% subsidiary of Case, it would appear reasonable that instead of having all the 15,000 plus produced documents translated word-for-word (particularly when not all may be relevant), that Case have its Brazilian employees, particularly the ones with knowledge of this suit, assist in reviewing the documents to find the relevant ones. Case would then only need to translate the documents that are relevant. Moreover, considering that Case is a Wisconsin corporation and that many of the witnesses charged in the Complaint no doubt live in that vicinity, this Court does not see how transferring this action to Brazil would be any more convenient to Case than litigating the case here, which is practically in its own back yard. Accordingly, this Court holds that Case has not presented sufficient "newly discovered evidence" for this Court to reverse its ruling on the forum non conveniens issue.

Case also contends that this Court erred in holding that Illinois law (and not Brazilian law) governs Extra's fraud claims. In support of this contention, Case relies on Medline Industries Inc. v. Maersk Medical Ltd., 230 F. Supp. 857, 862 (N.D. Ill. 2002), which held that a contractual choice-of-law provision applied to a fraudulent inducement claim that was "dependent upon" the underlying contract. There are a number of problems with this argument. First, Case ignores the numerous cases cited on page 12 of the January Order which held that under the most significant contacts test the law of the state where the fraudulent conduct took place governs a claim for fraudulent inducement.

4

Moreover, this Court finds that Medline is distinguishable from this case. In Medline, 230 F. Supp. at 859-60, an Illinois corporation entered into an exclusive licensing agreement with an English company and a Scottish company. After the Illinois company discovered that the foreign companies had licensed the product to a third-party, it brought suit in Illinois for breach of contract, fraudulent inducement, and tortious interference. Id. at 860. On a motion to dismiss, the court held that an English choice-of-law provision in the underlying licensing agreement applied to the fraudulent inducement claim. Id. at 863. The court based this holding on its finding that the fraudulent inducement claim was "dependent upon the contract" because "the allegedly fraudulent statements were made in the contract." Id.

Here, the Waukegan Agreement (which has a Brazilian choice-of-law clause) does contain alleged false representations that Mr. Sherman (who was the head of Case's Latin American operations) had the authority to bind Case Brasil. Unlike Medline, however, Extra's fraud claims are not dependent upon the Waukegan Agreement. As explained in detail in the January Order, Extra's fraud allegations are premised on conduct prior to the signing of the Waukegan Agreement. To get Extra (and its president Mr. Briante) to come to Waukegan to sign the Agreement, Case allegedly assured Extra that Mr. Sharman had the authority to bind Case Brasil to the Agreement. These representations were allegedly repeated by Case on the day the Agreement was signed. Additionally, in contrast to the defendants in Medline, who were parties to the underlying contract, Case is not even a party to the Waukegan Agreement. Consequently, although it is a close call, this Court cannot hold that Extra's fraud claims are "dependent upon" the Waukegan Agreement, and therefore, the Agreement's choice-of-law clause does not govern Extra's fraud claims.

In the alternative, Case moves this Court to "order Extra to pay for all translation and interpreter costs." This is a motion which should be taken up with Magistrate Judge Schenkier, who is handling discovery in this case. At this point in time, it would be absurd for this Court to blindly order Extra to pay Case the cost of translating over 15,000 documents, without knowing if such documents are even relevant to this litigation. Moreover, it appears that, at least during the discovery phase, this Court does not have the authority under the federal rules to even enter such an order. In re Puerto Rico Elec. Power Auth., 687 F.2d 501, 508-09 (1st Cir. 1982); Cook v. Volkswagen of America, 101 F.R.D. 92 (S.D. W. Va. 1984). Accordingly, the Court DENIES this request without prejudice.

## CONCLUSION

For the reasons discussed, this Court DENIES Defendant Case Corporation's Motion to Reconsider [83-1].

ENTER: _____
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE:_____