# IN THE UNITED STATE DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **EXTRA EQUIPAMENTOS E EXPORTAÇÃO LTDA.** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 01 CV 8591** |
| | ) | **Hon. Blanche M. Manning** |
| **v.** | ) | |
| | ) | |
| **CASE CORPORATION,** | ) | |
| **Defendant.** | ) | |

### MEMORANDUM AND ORDER

After prevailing on its motion for summary judgment, defendant Case Corporation seeks reimbursement for its costs of litigation to the tune of $246,295.79. Plaintiff Extra Equipamentos E Exportação Ltda. objects to most of those costs. For the reasons that follow, the court grants in part and denies in part Case's request for costs.

### STANDARD

Federal Rule of Civil Procedure 54(d) provides that "[c]osts . . .shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d). Recoverable costs include: (1) fees of the clerk; (2) fees for transcripts; (3) fees for printing and witnesses; (4) fees for copies of papers necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court appointed experts and interpreters. *See* 28 U.S.C. §1920. Rule 54(d) creates a strong presumption favoring the award of costs to the prevailing party. *See Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir.1997). "The presumption is difficult to overcome, and the district court's discretion is narrowly confined-the court must award costs unless it states good reasons for denying them." *Id.*

# ANALYSIS

## General Objection

Before turning to the specific items for which Case seeks costs, the court first addresses

Extra's general objection to awarding costs at all. According to Extra, Case ultimately prevailed

on a legal argument "that required no discovery and no litigation to resolve." The legal argument

upon which Case prevailed was that Extra could not establish fraud because it could not establish

that its reliance on extra-contractual statements was reasonable given the existence of a non-

reliance clause. Extra argues that if Case had raised that argument in a motion to dismiss rather

than in a motion for summary judgment, most of Case's costs could have been avoided.

While costs will normally be awarded to a prevailing party, costs can be partially or

completely denied if the prevailing party engaged in misconduct or bad faith that would justify

denying costs as a penalty. *See Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir.

1995); *see also EEOC v. Sears, Roebuck & Co.*, 114 F.R.D. 615, 620 (N.D. Ill. 1987) (costs will

be denied only "upon a showing by the losing party of the prevailing party's bad faith or

misconduct"). Extra argues that Case's failure to raise the issue of the reasonableness of Case's

reliance any earlier justified denying an award of costs, citing *Chicago Sugar Co. v. American*

*Sugar Refining Co.*, 176 F.2d 1, 11 (7th Cir. 1949) (one basis for denying an award of costs

would be the defendant's delay "in raising objection fatal to the plaintiff's case"). However,

*Chicago Sugar* did not involve the delayed assertion of a defense. The only case Extra cites

which denied costs based upon delay alone is *Harland v. Bankers' & Merchants' Tel. Co.*, 32 F.

305, 309 (S.D.N.Y. 1887), in which the defendant failed to assert an obvious defense (lack of

ownership) at any stage of the case. But the decision in *Harland* is at odds with the requirement

set forth in more recent cases that only misconduct or bad faith would warrant denying a prevailing party its reasonable requests for costs. *See Contreras*, 119 F.R.D. at 1295; *Sears, Roebuck*, 114 F.R.D. at 620.

Although Extra asserts that Case unnecessarily delayed raising its reasonable reliance defense, Extra has offered no evidence that Case intentionally delayed for any dilatory purpose. In the absence of any evidence of misconduct or bad faith, Extra has failed to establish any basis for imposing upon Case the penalty of denying its reasonable requests for costs. Having concluded that Case is entitled to costs, the court will not examine the reasonableness of Case's requests.

**Fees for the Court Reporter**

Case seeks to recover court reporter fees in the amount of $23,475.74. Under 28 U.S.C. § 1920(2), costs for the "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case" can be recovered. The total court reporter fees Case seeks consists of the following components: (1) court reporter appearance fees; (2) fees for copies of deposition transcripts; (3) fees for videotaping depositions; (4) fees for copies of court hearing transcripts; and (5) fees for copies of deposition exhibits. Extra does not object to the fees for copies of deposition transcripts and for the transcript of one court hearing, but does object to the remaining costs.

### *Court Reporter Appearance Fees*

Although some courts have held that court reporter appearance fees cannot be recovered, those cases fail to acknowledge the Seventh Circuit's conclusion that they can be recovered if the court determines, in its discretion, that the costs were reasonable. *See Held v. Held*, 137 F.3d

998, 1002 (7th Cir. 1998). Case has detailed the time spent and the total appearance fee charged

for each deposition, from which the court has determined, in its discretion, that the court

reporters' hourly rates and total costs were reasonable. Therefore, Case is entitled to recover

those fees.

### *Videotaping Fees*

Costs for both written transcripts as well as videotaped recordings of depositions can be

recovered if the videotaping was reasonably necessary. *See BCS Ins. Co., Inc. v. Guy Carpenter*

*& Co., Inc.*, No. 04 C 3808, 2006 WL 695650, at * 2 (N.D. Ill. May 12, 2006) (awarding costs

for both transcripts and videotapes for deponents located outside the court's subpoena power).

The court agrees with Case that recording those depositions that were videotaped was reasonably

necessary for two reasons. First, the deponents who were videotaped were outside the court's

subpoena power, mostly in Brazil. *See Sembos v. Philips Components*, No. 00 C 4651, 2003 WL

22533579, at *1 (N. D. Ill. Nov. 6, 2003) (videotaping a deponent who resided in England was

reasonably necessary). Second, a number of the deponents testified in Portugese; memoralizing

their testimony on videotape would help resolve any conflicts over subsequent translations.

Case also seeks costs for transferring the videotaped depositions to DVD, to which Extra

objects. Neither side cites case law to support their view, though Case contends that the

conversion costs were reasonable because DVD technology is "the preferred technology." If

DVD technology was preferred, then Case should have hired a videographer who provides

depositions on DVD to begin with, rather than incurring the additional expense of transferring a

videotape to DVD. With that in mind, the court concludes that the costs of transferring

videotaped depositions to DVD was not reasonable, and those costs shall not be allowed.

### Hearing Transcripts

Case seeks the cost for obtaining transcripts of five hearings before the magistrate judge on discovery matters. Case obtained one transcript—for a hearing on June 2, 2005—on an expedited basis because the hearing covered a wide range of discovery issues and because the parties had to meet and confer before a subsequent hearing scheduled for June 8, 2005. Extra does not object to the cost of that transcript, but contends that obtaining transcripts of four other hearings was not reasonably necessary. Case argues that the transcripts were necessary "to understand court orders regarding discovery motions," and to "compl[y] with the Court's guidance."

The court has reviewed those transcripts that Case attached to its reply memorandum, and finds nothing in them of a particularly complicated nature. In the court's view, note-taking during the hearing would have adequately memorialized the magistrate judge's guidance. Accordingly, the transcripts were unnecessary and the costs cannot be recovered.

### Deposition Exhibits

Case also requests costs for making a copy of "official marked" deposition exhibits for use at later depositions and trial. Based upon the facts of this case including the number of depositions taken and the number of exhibits used, costs of $496.30 are not unreasonable.

## Witness Fees

### Airfare Costs

Case seeks $10,500 in airfare for the cost of flying deponents from Brazil. Although the deponents apparently flew first-class, Case is seeking the approximate cost to fly economy class. Extra agrees that airfare is a recoverable cost, but objects to the amount Case seeks because Case

based its estimate on the cost of refundable tickets.  Extra contends that non-refundable tickets

would have been more economical, and would have totaled only $4,628.40.

The prevailing party may recover travel expenses, but only for travel on "a common

carrier at the most economical rate reasonably available."  *See* 28 U.S.C. § 1821(c)(1).  Because

the non-refundable tickets for which Extra received quotes were more economical than the

refundable tickets for which Case received quotes, Case's recoverable costs are limited to

$4,628.40.  The court acknowledges that for business travelers purchasing refundable tickets is

often the norm given that meetings and flights must often be rescheduled.  However, the court

must interpret the phrase "most economical rate reasonably available" based upon its plain

meaning.  *See United States v. Davis*, 471 F.3d 783, 787 (7th Cir. 2006).  Under its plain

meaning, the statute authorizes the recovery of no more than the cost of the most economical

tickets, which based upon the facts of this case were the non-refundable tickets discussed above.

### *Hotel Costs*

Case seeks $1,982 in hotel costs for its deponents based upon the applicable per diem

allowed under law at the time.  *See* 28 U.S.C. § 1821(d).  Extra objects not to the per diem Case

used, but to the number of nights each deponent stayed in their hotels.  For instance, Caio

Kugelmas was deposed on March 9, 2006, but spent four nights in a hotel—Extra argues that,

even allowing for travel time, he needed at most two nights in a hotel.  Similarly, Roque Reis

was deposed over the course of two days, October 12 and 13, 2005, but spent six nights in a

hotel—Extra argues that he needed no more than three nights.  Finally, Valentino Rizziolli was

deposed over the course of two consecutive days, but spent four nights in a hotel.  In response,

Case asserts that the deponents needed to spend the extra nights in Chicago in order to meet with Case's attorneys.

The court agrees with Extra that the costs for the additional nights are not reasonable. The additional days that the deponents spent in Chicago were for the convenience of Case and its counsel, and therefore those costs are not recoverable. *See Kittler v. City of Chicago*, No. 03 C 6992, 2006 WL 1762036, at \*3 (N.D. Ill. June 26, 2006) ("attorney convenience is not a sufficient basis for recovering costs."). Case is entitled to recover the costs for two nights' lodging for Kugelmas, and three nights each for Reis and Rizziolli. The additional nights' lodging is not recoverable.

### Expert Witness Expenses

Case seeks the costs for the deposition of its expert witness, Den Uyl, as well Uyl's time spent preparing for his deposition. Extra does not contest Uyl's hourly rate or the time billed for his actual deposition, and agrees this amounts to $5,325 . However, Extra does object to the cost for the expert's "deposition preparation," which totals $29,690.

Generally, an expert's time spent preparing for his deposition is not a recoverable cost. *See Rhee v. Whitco Chem. Corp.*, 126 F.R.D. 45, 47 (N.D. Ill. 1989). However, for complex cases which require the expert to review "voluminous documents," a court may, in its discretion, award preparation costs. *Id.* As an example, in *Rhee*, Judge Norgle opined that preparation fees might be recoverable where a deposition had been repeatedly rescheduled to the point where it finally occurred long after the expert had prepared his report, requiring the expert to repeatedly refresh his recollection by reviewing voluminous documents. *Id.* Other decisions awarding preparation costs conclude cursorily that the case was complex, without describing the level of

complexity needed to support an award of preparation costs. *See, e.g., McClain v. Owens-Corning Fiberglass* Corp., No. 89 C 6226, 1996 WL 650524, at *3 (N.D. Ill. Nov. 7, 1996) (concluding cursorily that the case was complex); *EEOC v. Sears, Roebuck & Co.*, 138 F.R.D. 523, 526 (N.D. Ill. 1991) (same). However, in those decisions the courts noted that the prevailing party had retained multiple experts.

The parties have offered no evidence upon which the court can conclude that this case was complex or that preparation costs are justified. There is no evidence that Uyl's deposition was repeatedly rescheduled, or that it occurred long after he prepared his expert report. *See Rhee*, 126 F.R.D. at 47. There is no evidence that the same was so complex that either side retained multiple experts. *See Sears, Roebuck*, 138 F.R.D. at 526. To the contrary, based upon its review of the complaint and the evidence submitted during briefing of Case's motion for summary judgment, this case presented nothing more than run-of-the-mill fraud claims, albeit claims involving an international cast.

Furthermore, from the information provided by Case it appears that a significant portion of the "voluminous documents" that Uyl reviewed in preparation for his deposition were the same documents that he had already reviewed to prepare his expert report. For instance, Uyl states in a declaration that he reviewed 35,000 pages of Bates-numbered documents produced by the parties in discovery, the same documents he had previously reviewed "[i]n order to prepare my opinions in this matter."

Because the claims involved in this case were not particularly complex, because much of what Uyl reviewed before his deposition was the same universe of documents he had previously reviewed to prepare his report, and because Case made no effort to single out the costs for Uyl's

review of new documents as opposed to previously-reviewed documents, the costs for Uyl's

deposition preparation are inappropriate and denied.

**Copying Costs**

Case seeks the cost for making copies. Extra does not object to the costs of copying

"documents for discovery" (totaling $5.94) or for Bates stamping (totaling $1,102.31), but does

object to portions of the costs for copying the following categories of documents: (1) two sets of

copies of documents Case produced to Extra; (2) one set of copies of correspondence; (3) four

sets of copies of pleadings; (4) three sets of deposition exhibits and two sets of trial exhibits; and

(5) 472,186 "miscellaneous" copies.

The cost of copies to be retained by the prevailing party cannot be recovered. *See Craven*

*v. City of Chicago*, No. 97 C 8845, 2001 WL 62573, at *2 (N.D. Ill. Jan. 25, 2001). Accordingly,

Case can recover the cost of only one set of the discovery documents it produced to Extra, not the

second set it retained. Likewise, it cannot recover for the cost of retaining a copy of its

correspondence, pleadings, deposition exhibits or trial exhibits. However, it can recover for the

cost of pleadings actually filed with the clerk and courtesy copies provided to the court (including

two sets of copies of summary judgment materials as required by the court's standing order).

As for the staggering number of "miscellaneous" copies, the cost of which totals

$47,396.58, those costs are denied. While Case provided a description of the type of work its

counsel was performing during some of the months when these costs were incurred, it has made

no effort to describe what these "miscellaneous" copies were. Although Case is correct that it

does not need to "submit a bill of costs so detailed as to make it impossible economically to

recover photocopying costs," the court needs at least some explanation in order to determine

whether the costs are reasonable. *See Am. Auto. Accessories, Inc. v. Fishman*, 991 F. Supp. 995, 997 (N.D. Ill. 1998). In the absence of *any* explanation what the copies were, the request for the cost of 472,186 "miscellaneous" copies is denied.

**Interpretation and Translation Costs**

Case seeks $9,800 for interpretation costs incurred during depositions and $114,791.14 for having documents translated from Portugese into English. Extra does not object to the interpretation costs, so the court will review only the request for translation costs.

Translation costs are recoverable under 28 U.S.C. § 1920(6), except when the translation was performed solely for investigational purposes. *See Baxter Int'l, Inc. v. McGaw, Inc.*, No. 95 C 2723, 1998 WL 102668, at *9 (N.D. Ill. Mar. 3, 1998). Extra concedes that the cost to translate exhibits used at deposition, summary judgment, or included on Case's trial exhibit list are recoverable. Case has prepared charts summarizing the translations costs for that universe of documents, which total $75,722.04. The court has reviewed Case's charts and corresponding invoices and determines, in its discretion, that its calculations are supported by the evidence submitted. Accordingly, Case is awarded the $75,722.04 spent translating exhibits used at deposition, summary judgment, or included on Case's trial exhibit list.

As for the remaining $40,000 that Case spent on document translations, Case argues that the translations were needed "for defensive purposes" and "to identify, in the first instance, which Portuguese documents might be candidates for deposition or summary judgment exhibits." Case's argument is similar to the one rejected in *Baxter*, where the defendant attempted to recover the costs to translate documents that "were necessary because, without [the translations], McGaw's counsel could not determine whether [the documents] provided important evidence for

the case." *Id.* Because the costs for investigational translations are not recoverable, the court in *Baxter* rejected the request for costs, as this court must reject Case's similar request.

## CONCLUSION

The court has detailed the category of costs that can be recovered and those that cannot. The parties are directed to confer and draft an agreed order on costs in accordance with the court's ruling for presentation to the court. The agreed order shall be filed with the clerk (and a courtesy copy shall be delivered to chambers) no later than June 8, 2007. If the agreed order meets with the court's approval, it will be entered without the need for counsel's appearance.

ENTER:

DATE:  May 24, 2007

Blanche M. Manning
United States District Judge